## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **ROGER JAMES, individually, and on behalf of all others similarly situated,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**BOYD GAMING CORPORATION, and KANSAS STAR CASINO, LLC,**<br><br>          **Defendants.** | **Case No. 2:19-cv-2260**<br><br>**JURY TRIAL DEMANDED** |

### COLLECTIVE ACTION COMPLAINT

Plaintiff Roger James ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Collective Action Complaint against Defendants Boyd Gaming Corporation ("Defendant Boyd") and Kansas Star Casino, LLC ("Defendant Kansas Star") (collectively, "Defendants"), and hereby states and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff and all other similarly situated individuals were or are employees of Defendant Boyd, a casino entertainment company.  In addition, Plaintiff and all other similarly situated individuals were likewise jointly employed by both Defendant Boyd and one of Defendant Boyd's subsidiary casino entities (each of Defendant Boyd's casino properties is affiliated with a separate business entity that is ostensibly established to operate each casino property for Defendant Boyd).  For example, Plaintiff's acknowledged employer is Defendant Kansas Star.  Plaintiff worked at Defendants' Kansas Star Casino property in Mulvane, Kansas.  Under Defendant Boyd's corporate structure, the Kansas Star Casino is ostensibly directly owned and operated by Defendant Kansas Star.  In turn, Defendant Kansas Star is wholly-owned, operated, and controlled by Defendant Boyd.

1

2.      Pursuant to their company-wide policies and procedures, Defendants failed to pay Plaintiff, and other similarly situated employees, the mandated federal and state minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

3.      Specifically, as explained in more depth below, Defendants employ a significant number of tipped employees who are paid a direct cash wage below the FLSA's $7.25 per hour minimum wage.  Defendants claim a portion of tipped employees' tips as a credit against their obligation to pay these employees minimum wage.  However, Defendants are not entitled to claim the tip credit under the FLSA for two distinct reasons.  First, Defendants may not claim a tip credit against their obligation to pay Plaintiff and all other similarly situated individuals minimum wage because Defendants failed to give the FLSA's required tip credit notice prior to claiming a tip credit.  This practice impacted all tipped employees at Defendants' casino properties.  Second, Defendants violated the FLSA's tip pooling provisions in permitting managers and supervisors to participate in the table games dealers' tip pool.  This practice impacted all tipped employees who participate in the table games dealers' tip pool at Defendants' casino properties.  As a result, Plaintiff and all other similarly situated employees are entitled to damages from Defendants in the form of the difference between their direct cash wage and the FLSA's $7.25 minimum wage for all hours worked for the three years preceding the filing of this Collective Action Complaint through the present, all pooled tips wrongfully diverted to managers and supervisors, an equal amount in liquidated damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Federal question jurisdiction over the FLSA

2

claims of Plaintiff and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.      Plaintiff is a resident of the State of Kansas.  From approximately November 2015 to the present, Plaintiff has been employed by Defendants at Defendants' casino property located at 777 Kansas Star Drive, Mulvane, Kansas 67110.  During his employment, Plaintiff worked as a Table Games Dealer and Dual Rate Supervisor (both of which Defendants consider and treat as hourly, non-exempt positions).  Plaintiff's Consent to Join pursuant to 29 U.S.C. § 216(b) is attached as **Exhibit 1.**

7.      Defendant Kansas Star is a limited liability company organized under the laws of the State of Kansas.  Defendant Kansas Star is registered to do business and does conduct business in the State of Kansas.  Defendant Kansas Star operates, among other things, a casino property in the City of Mulvane, Kansas.  Defendant Kansas Star's contacts with the State of Kansas are of such a continuous and systematic nature as to subject Defendant Kansas Star to general personal jurisdiction in the State of Kansas.  Defendant Kansas Star is also the acknowledged employer of Plaintiff in the State of Kansas and, as such, is subject to specific personal jurisdiction in the State of Kansas with respect to the claims at issue in this case.

8.      Defendant Boyd is a corporation organized under the laws of the State of Nevada, with its principal place of business ostensibly located in the State of Nevada.  Defendant Boyd is subject to general personal jurisdiction in the State of Kansas and specific personal jurisdiction in the State of Kansas as it relates to this action.

9.     According to Defendant Boyd's Form 10-K, filed on March 1, 2019, "Boyd Gaming Corporation … is a multi-jurisdictional gaming company that has been in operation since 1975.  Headquartered in Las Vegas, we operate 29 wholly owned gaming entertainment properties in Nevada, Illinois, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Ohio and Pennsylvania."

10.    The State of Kansas approved Defendant Boyd's acquisition of the Kansas Star Casino in 2012.

11.    Defendant Boyd has submitted to regulation in the State of Kansas.  Specifically, Defendant has submitted to regulation by both the Kansas Lottery Commission and the Kansas Racing and Gaming Commission.

12.    Defendant Boyd is the Gaming Manager for the South Central Zone in Kansas.

13.    Defendant Boyd processes and pays Plaintiff's (and all other similarly situated employees') wages and directs the same be sent into the State of Kansas with respect to Plaintiff's employment at Defendants' Kansas Star Casino property in the Mulvane, Kansas.

14.    Defendant Boyd identifies itself as Plaintiff's (and all other similarly situated individuals') employer in connection with processing and paying wages and directing the same be sent into the State of Kansas with respect to Plaintiff's employment at Defendants' Kansas Star Casino property in Mulvane, Kansas.

15.    Defendant Boyd is responsible for, through and with its casino subsidiary Defendant Kansas Star, implementing the policies at issue in this case at the Kansas Star Casino in Mulvane, Kansas.  Defendant Boyd has directed its actions into the State of Kansas, including the establishment, maintenance and administration of the specific unlawful policies and practices challenged in this action, have all been principally directed into and occurred in the State of

Kansas. Defendant Boyd and Defendant Kansas Star collectively established, maintained, and administered, in the State of Kansas, the specific unlawful policies and practices challenged in this action.

16.     Defendant Boyd and Defendant Kansas Star also together formed a joint employment relationship (a subject matter of Plaintiff's specific claims in this action) with respect to Plaintiff and other similarly situated employees, which (1) conferred in Kansas the power to hire and fire Plaintiff and other similarly situated employees; (2) resulted in supervision and control in Kansas over the work schedules, terms and conditions of employment, and manner in which Plaintiff and other similarly situated employees performed their jobs; (3) resulted in the rates and methods of payment for Plaintiff and other similarly situated employees being determined, established, maintained and administered in Kansas, including as to the specific policies and practices challenged in this action; and (4) resulted in the creation and maintenance of employment records and the handling of payroll and human resources matters for Plaintiff and other similarly situated employees in Kansas, including the specific payroll, time records and policies / practices at issue in this action. Thus, Defendant Boyd and Defendant Kansas Star together purposefully availed themselves of the privilege of conducting activities in Kansas. The specific claims at issue in this action arise out of and result from Defendant Boyd and Defendant Kansas Star's Kansas-related activities because, but for these Kansas-related activities, the claims of Plaintiff and others similarly situated would not have arisen. The exercise of specific personal jurisdiction over Defendant Boyd comports with fair play and substantial justice because it is reasonable for Defendant Boyd to be sued in Kansas given that the specific claims at issue in this action arise out of and result from Defendant Boyd's purposeful Kansas-related activities. Defendant Boyd is, therefore, subject to specific personal jurisdiction in the State of Kansas.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### Overview of Defendants' Violation of the FLSA's Tip Credit Notice Provisions

17.     An employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees.  Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m)(2).

18.     The federal regulations expand on the language of the FLSA by explaining as follows:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

19.     Defendants employ Plaintiff and other similarly situated tipped employees and pay them a direct cash wage that is less than the FLSA's $7.25 minimum but failed to properly notify them of the tip credit requirements of the FLSA.  Despite this violation of the FLSA's tip credit notice provisions, Defendants have taken a tip credit toward their obligations to pay minimum wage to Plaintiff and all other similarly situated tipped employees.

20.     Specifically, Plaintiff and other similarly situated employees are not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

21.     Likewise, when Defendants change the amount of the tip credit they claim against their obligation to pay Plaintiff and other similarly situated employees the FLSA's required minimum wage, Defendants do not inform Plaintiff and other similarly situated employees of the change in the amount of the tip credit claimed.

22.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA.

23.     As a result of Defendants' above-described FLSA violations, and pursuant to 29 U.S.C. § 216(b), Plaintiff and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, (2) an additional equal amount as liquidated damages, and (3) a reasonable attorneys' fee and costs of this action.

### Overview of Defendants' Violations of the FLSA's Tip Pooling Provisions

24.     Defendant Boyd has established a uniform or substantially similar Paid Time Off ("PTO") policy that governs PTO for hourly employees at its casino properties, including the casino properties associated with Defendant Kansas Star.

25.     Defendants' PTO policy provides that PTO hours accrue for every hour worked based on the employee's length of service with Defendants according to a set schedule.

26.     Defendants jointly employ certain workers under the job title "Dual Rate Supervisor" (or its equivalent by any other name), which includes employment in two occupations: (1) floor supervisor; and (2) table games dealer.  The Department of Labor refers to this type of employment as a "dual job" situation.

27.     With respect to their employment as a floor supervisor (a non-tipped occupation), these employees are paid a regularly hourly rate (say, $19 per hour) in excess of the federal minimum age.  Defendants classify full-time floor supervisors (who perform the same job duties as dual rate supervisor when dual rate supervisors are functioning in their floor supervisor role) as exempt pursuant to the executive and/or administrative exemption.  Hours worked in their employment as a floor supervisor are specifically tracked and separately paid as such in Defendants' timekeeping and payroll records.

28.     With respect to their employment as a table games dealer (a non-exempt, tipped occupation that participates in a mandatory tip pooling arrangement), Defendants pay a sub-minimum direct cash wage. Under the FLSA, the sub-minimum direct cash wage must be at least $2.13 per hour, and the employer is able to count a limited amount of the employee's tips (as re-distributed by the employer to the employee under a valid tip pooling arrangement) as a partial credit to satisfy the difference between the direct cash wage and the required federal minimum wage. *See* 29 U.S.C. § 203(m)(2)(A).  The credit allowed on account of tips may be less than that

permitted by statute, but it cannot be more.  To illustrate, if Defendants pay a table games dealer a sub-minimum direct cash wage of say $4.25 per hour, the amount of the "tip credit" would be $3 (the difference between the employee's direct cash wage of $4.25 and the federal minimum wage of $7.25) – on the assumption further that the amount of tips actually received by the tipped employee (as re-distributed by Defendants according to the mandatory tip pooling arrangement) is enough to make up the difference between the employee's direct cash wage and the federal minimum wage; if not, Defendants must make up the difference to ensure the employee is paid at least the required minimum wage for all hours worked in their employment as a table games dealer.

29.     Under the FLSA, when an employer employs someone in both a tipped and non-tipped occupation, the tip credit is available only for the hours the employee works in the tipped occupation.  Thus, for Defendants' dual rate supervisors, the hours worked in the tipped occupation (table games dealer) must be tracked and paid separately from the hours worked in the non-tipped occupation (floor supervisor).

30.     When Defendants' dual rate supervisors take PTO, Defendants' uniform or substantially similar policy or practice is that dual rate supervisors are paid on the false assumption that they are employed as a table games dealer and that they accrued most or all of their PTO hours while working as a table games dealer, even though many (likely most or in some cases nearly all) of these employees' PTO hours were accrued in their employment as a floor supervisor.  PTO hours accrued in their employment as a floor supervisor (a non-tipped occupation and, according to Defendants, an exempt position) are not properly included in any valid tip pooling arrangement among table games dealers.  But that is precisely what Defendants are doing for their own economic benefit and to the detriment of these employees.

31.     To illustrate, under Defendants' uniform or substantially similarly policy or practice, Defendants pay dual rate supervisors their PTO by paying them the sub-minimum direct cash wage applicable to their employment as a table games dealer (in the above example, $4.25 per hour – rather than the $19.00 per hour that applies to them in their employment as a floor supervisor), plus directing that all of their PTO hours be included as part of the mandatory tip pooling arrangement among Defendants' table games dealers, which results in Defendants unlawfully redistributing a portion of the table games dealers' tips to improperly pay for PTO hours that dual rate supervisors accrue in their employment as a floor supervisor (a non-tipped occupation and, according to Defendants, a position whose job responsibilities fall within the FLSA's administrative and/or executive exemption).

32.     Defendants also unlawfully redistribute a portion of the table games dealers' tips to dual rate supervisors when they are paid for such things as jury duty, bereavement leave, sick leave, FMLA leave, and the like, which accrue and/or are paid in the same or substantially similar unlawful manner as the PTO described above.  To the extent dual rate supervisors accrue such additional paid leave in their employment as a floor supervisor, those hours cannot be included as part of any valid tip pooling arrangement among table games dealers.

33.     Defendants' above-described scheme for the payment of PTO hours (and other forms of paid leave) for dual rate supervisors is unlawful and violates the FLSA's tip-pooling provisions because (1) Defendants are violating the FLSA's requirement that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement; (2) Defendants are violating the FLSA's prohibition against the pooling of tips among employees who do not customarily and regularly receive tips; and (3) Defendants are violating the FLSA's requirement that it "not keep tips received by its employees for any purposes, including allowing

managers or supervisors to keep any portion of the employees' tips, regardless of whether or not the employer takes a tip credit" – *see* 29 U.S.C. § 203(m), as amended by the Consolidated Appropriations Act, 2018 (signed March 23, 2018), along with such section as was in effect prior to then, and all applicable regulations.

34.     Defendants' above-described scheme also results in Defendants' violation of the FLSA's minimum wage payment requirements, 29 U.S.C. § 206, because Defendants are paying a direct cash wage to table games dealers that is less than the required minimum wage, and, due to Defendants' non-compliance with the FLSA's tip-pooling provisions, Defendants are not entitled to any credit using employees' tips against its minimum wage obligation.

35.     Because Defendants' FLSA violations as alleged herein were neither sporadic nor infrequent, Defendants' tip pooling arrangement for table games dealers should be invalidated for the entire statutory look-back period of three (3) years.  Alternatively, and at a minimum, Defendants' tip pooling arrangement for table games dealers should be invalidated as to any pay period during the statutory look-back period of three (3) years in which Defendants unlawfully kept and then improperly redistributed table games dealers' tips to pay PTO hours (or other forms of paid leave) accrued by dual rate supervisors in their employment as a floor supervisor.

36.     As a result of Defendants' above-described FLSA violations, and pursuant to 29 U.S.C. § 216(b), Plaintiff and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by dual rate supervisors in their employment

as a floor supervisor, (3) an additional equal amount as liquidated damages, and (4) a reasonable attorneys' fee and costs of this action..

37.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA.  By way of example, Defendants recognize, by their own pay policies, that Dual-Rate Supervisors are not permitted to participate in the table games dealers' tip pool for regular hours earned in their capacity as floor supervisors. Under the circumstances, it demonstrates willful violations of the FLSA, or at least reckless disregard for the FLSA, to include other compensation (e.g., PTO, bereavement leave, sick leave, etc.) accrued by Dual-Rate Supervisors in their role as floor supervisors for payment from the table games dealers' tip pool.

## DEFENDANT BOYD IS PLAINTIFF'S JOINT EMPLOYER

38.     Defendant Boyd operates a hub and spoke employment structure whereby, Boyd, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Defendant Kansas Star.  By design, each individual casino is the acknowledged employer of the employees, like Plaintiff, who physically work at that casino property.  However, in reality, from its position at the operational center of this structure, Boyd operates its casinos and instructs its subsidiary casinos on how and when to execute all manner of employment policies.  The subsidiary casinos, including Defendant Kansas Star, must and do follow Boyd's operational instructions.  Due to the pervasive control Boyd has exercised and continues to exercise over the employees at each of its casinos (both directly and indirectly), Boyd is the joint employer of Plaintiff and all others similarly situated.

39.     There is no material difference between the manner in which Defendant Boyd treats each of its subsidiary casinos or the employees who work at each subsidiary casino property.  Each of the subsidiary casinos is akin to a regional office of Boyd's nationwide gaming operation with Boyd in control and directing the policies and procedures across the country.

40.     At all relevant times, Defendants were the employer and joint employer of Plaintiff, and all other similarly situated employees:

        a.     Defendants had the power to and exercised control over the hiring and firing of Plaintiff and all other similarly situated employees;

        b.     Defendants had the right to and did supervise and control the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;

        c.     Defendants determined the rate and method of payment for Plaintiff and all other similarly situated employees; and

        d.     Defendants maintained employment records for Plaintiff and all other similarly situated employees.

41.     At all times relevant to this action, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

42.     Plaintiff and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendants at their casino properties within the respective limitations periods.

**COLLECTIVE ACTION ALLEGATIONS**

43.     Plaintiff brings Count I, the FLSA claim arising out of Defendants' violation of the FLSA's tip credit notice provisions, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

a.     **FLSA Unlawful Tip Credit Notice Collective:** All persons employed in tipped hourly positions and paid a direct cash wage that is below $7.25 per hour at any of Defendant Boyd's casino properties in the United States at any time from three (3) years prior to the filing of the initial Collective Action Complaint to the present.  All persons who work or worked at the following of Defendant Boyd's casino properties are excluded from this collective:  Ameristar St. Charles (St. Charles, Missouri), Ameristar Kansas City (Kansas City, Missouri); Belterra Casino Resort (Florence, Indiana); Belterra Park (Cincinnati, Ohio), and all properties located in Nevada.

44.     Plaintiff brings Count II, the FLSA claim arising out of Defendants' violation of the FLSA's tip pooling provisions, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following collective action class:

b.     **FLSA Unlawful Tip Pool Collective:** All persons employed as table games dealers and included within a tip pooling arrangement at any of Defendant Boyd's casino properties in the United States at any time from three (3) years prior to the filing of the initial Collective Action Complaint to the present.  All persons who work or worked at the following of Defendant Boyd's casino properties are excluded from this collective:  Ameristar St. Charles (St. Charles, Missouri), Ameristar Kansas City (Kansas City,

Missouri); Belterra Casino Resort (Florence, Indiana); and Belterra Park (Cincinnati, Ohio).

45.     Plaintiff's FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

46.     Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

## ALLEGATIONS APPLICABLE TO ALL FLSA CLAIMS

47.     At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

48.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

49.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

50.     During all relevant times to this action, Defendants were the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

51.     During all times relevant to this action, Plaintiff and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

52.     Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

53.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

54.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

55.     Plaintiff and all similarly situated employees are victims of uniform compensation policies.

56.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Collective Action Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

57.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

58.     As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## COUNT I – Violation of the FLSA

### Defendants' Violation of the FLSA's Tip Credit Notice Provisions

59.     Plaintiff re-alleges the allegations set forth above.

60.     Defendants violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

61.     Specifically, Defendants paid Plaintiff and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

62.     In particular, Plaintiff and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

63.     Defendants failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations.  29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

64.     As Defendants have failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendants have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing to Plaintiff and all other similarly situated employees.

65.     Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and, therefore, Plaintiff and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA.

66.     WHEREFORE, on Count I of this Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

    a.     Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

    b.     Award Plaintiff and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

    c.     Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.     Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.     Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

   f.  Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## <u>COUNT II – Violation of the FLSA</u>

### Defendants' Violations of the FLSA's Tip Pooling Provisions

67.  Plaintiff re-alleges the allegations set forth above.

68.  Defendants violated the FLSA by implementing and maintaining an invalid tip pool as described above, thus failing to pay Plaintiff and other similarly situated employees all of the tips to which they were entitled.

69.  Further, by implementing and maintaining an invalid tip pool, Defendants are not entitled to take a tip credit against their obligation to pay Plaintiff and other similarly situated employees minimum wage.  As a result, Defendants are liable to Plaintiff and other similarly situated employees for the difference between their direct hourly wage (not counting tips) and the federal minimum wage as well as all wrongfully diverted tips.

70.  Defendants' practice was to unlawfully and willfully fail to comply with the requirements of implementing and maintaining a valid tip pool and, therefore, Plaintiff and the similarly situated employees were not properly compensated pursuant to the FLSA.

  **WHEREFORE**, on Count II of this Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

   a.  Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

   b.  Award Plaintiff and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

c.      Award Plaintiff and all similarly situated employees damages for all wrongfully diverted tips;

d.      Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

e.      Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

f.      Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

g.      Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates the federal court in Kansas City, Kansas, as the place of trial.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated:  May 24, 2019     Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ George A. Hanson*
George A. Hanson, KS Bar. No. 16805
Alexander T. Ricke, KS Bar No. 26302
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM**
*A Professional Corporation*

*/s/ Ryan L. McClelland*
Ryan L. McClelland,  D. KS Bar #78128
Michael J. Rahmberg, D. KS Bar #78725
The Flagship Building
200 Westwoods Drive
Liberty, Missouri  64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**