# EXHIBIT 1

**JOINT STIPULATION OF SETTLEMENT AND RELEASE**

This Joint Stipulation of Settlement and Release ("Agreement") is entered into by and between Plaintiff Roger James ("Plaintiff" or "Named Plaintiff"), on one hand, and Defendant Boyd Gaming Corporation and its relevant subsidiaries[1] (including Kansas Star Casino, LLC) (collectively "Defendants"), on the other hand. "Plaintiff" or "Defendants" may be referred to as a Party or, collectively, as the "Parties" to this Agreement.

## I.    LITIGATION.

**A.**    In May 2019, Plaintiff filed *James v. Boyd Gaming Corporation, et al.*, No. 2:19-cv-2260 (D. Kansas), a putative collective action alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), by failing to properly compensate certain of Defendants' non-exempt hourly employees (the "Litigation"). Specifically, Plaintiff alleged two causes of action: (1) failing to properly inform its tipped employees of the FLSA's required tip credit provisions before taking a tip credit related to the proper payment of minimum wage; and (2) improperly distributing tips from the table games dealers' tip pool to dual rate supervisors when the dual rate supervisors took Paid Time Off ("PTO") accrued while working as a dual rate supervisor.

Defendants denied, and continue to deny and vigorously dispute, the claims and allegations in the Litigation. Defendants produced both documents and testimony demonstrating that its employees received a proper tip credit notice, and no tips were improperly distributed. The Court did not make any determination regarding the merits of any of Plaintiff's claims.  With respect to the tip credit notice claim, Defendants contend that they provided notice of the FLSA's tip credit requirements in several documents or by verbal statements, or a combination of both. With respect to the tip pooling claim, Defendants contend that they produced both documents and testimony demonstrating that no tips were improperly distributed and, accordingly, Defendants denied, and continue to deny and vigorously dispute, that any tips were dispersed improperly at any of these casinos.

**B.**    In March 2021, the Court conditionally certified two collectives:

**1.**    **The Tip Credit Notice Collective.** The Tip Credit Notice Collective consists of the Named Plaintiff and persons who: (1) previously filed a Consent to Join the Litigation; (2) were allegedly employed by Boyd or the Boyd properties identified in this Paragraph at any point from three years and 60 days before January 1, 2018, until the date in or around the spring of 2019 (ranging from March 25, 2019 to June 1, 2019) when Boyd's existing tipped employees were provided with one document that included all of the tip credit notice requirements in writing and in one place, and (3) were paid a base hourly wage of less than the applicable federal minimum wage of $7.25 per hour plus tips. The 13 Boyd casinos alleged to employ, along with Boyd Gaming Corporation, the Tip Credit Notice Collective are: (1) Kansas Star Casino, LLC; (2) Par-A-Dice

---

[1] These properties are Par A Dice Gaming Corporation; Kansas Star Casino, LLC; Blue Chip Casino, LLC; Diamond Jo Worth, LLC; Diamond Jo, LLC; The Belle of New Orleans, LLC; Boyd Racing L.L.C.; The Old Evangeline Downs, L.L.C.; Red River Entertainment of Shreveport, L.L.C.; Treasure Chest Casino, L.L.C.; Imperial Palace of Mississippi, LLC; Boyd Tunica, Inc.; and Valley Forge Convention Center Partners L.P. ("Defendant Locations").

Gaming Corporation; (3) Blue Chip Casino, LLC; (4) Diamond Jo Worth, LLC; (5) Diamond Jo, LLC; (6) The Belle of New Orleans LLC; (7) Boyd Racing L.L.C.; (8) The Old Evangeline Downs, L.L.C.; (9) Red River Entertainment of Shreveport, L.L.C.; (10) Treasure Chest Casino, L.L.C.; (11) Imperial Palace of Mississippi, LLC; (12) Boyd Tunica, Inc.; and (13) Valley Forge Convention Center Partners, L.P. Defendants produced both documents and testimony demonstrating that its employees received a proper tip credit notice and, accordingly, Defendants denied, and continue to deny and vigorously dispute, that any employee failed to receive a proper tip credit notice.

   **2.**  **The Tip Pool Collective**. The Tip Pool Collective consists of the Named Plaintiff and persons who: (1) previously filed a Consent to Join the Litigation; (2) were allegedly employed as table games dealers by Boyd or the Boyd properties identified in this Paragraph and included within a tip pooling arrangement at any point from three years and 60 days before January 1, 2018 to March 2, 2021.[2] The nine (9) Boyd casinos alleged to employ, along with Boyd Gaming Corporation, the Tip Pool Collective are: (1) Kansas Star Casino, LLC; (2) Par-A-Dice Gaming Corporation; (3) Blue Chip Casino, LLC; (4) Diamond Jo Worth, LLC; (5) The Belle of New Orleans LLC; (6) Red River Entertainment of Shreveport, L.L.C.; (7) Treasure Chest Casino, L.L.C.; (8) Boyd Tunica, Inc.; and (9) Valley Forge Convention Center Partners, L.P.

   **C.**  **Notice.** On April 6, 2021, the Court approved the Parties' agreed-upon notice plan to provide notice to the putative collective members. Notice was sent to the putative collective members on May 5, 2021, who were afforded ninety (90) days to file a consent to join the Litigation (the "Notice Period").

   **D.**  **Approximately 830 "Opt-In Plaintiffs."** After the close of the Notice Period, approximately 830 individuals (including Named Plaintiff and individuals who had opted into the litigation prior to the Notice Period) at Defendant Locations had filed a Consent to Join the Litigation as part of the Tip Credit Notice Collective, the Tip Pool Collective, or both ("Opt-In Plaintiffs").

   **E.**  **Counsel.** Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. are attorneys for the Opt-In Plaintiffs ("Class Counsel"); and Polsinelli PC is attorney for Defendants ("Defendants' Counsel"). Class Counsel and Defendants' Counsel shall be referred to collectively as "Counsel."

## II.  SETTLEMENT.

   **A.**  The Parties agree that this Agreement is entered into solely based on the Parties' compromise of highly disputed claims and issues, and this Agreement is **not**, and **is not to be construed as**, an admission by any Party: (1) of any liability whatsoever (including any violation of federal, state, local, or common law, statute, ordinance, regulation, or order or of any other obligation or duty at law or equity); (2) that the Court, outside the context of evaluating, approving or rejecting, and/or overseeing or enforcing this settlement, may exercise jurisdiction

---

[2] This time period is relevant for the identification of putative collective members. In no way does this time period alter the date through which the release in Paragraph IV.C runs, which is December 31, 2021.

over (a) all claims alleged in the Collective Action Complaint filed in the Litigation on May 24, 2019 (ECF Doc. 1) (hereinafter, "Complaint"), (b) any of the Parties; or (c) any of the Opt-In Plaintiffs or putative collective members identified in the Complaint; (3) that Defendants are an employer or joint employer of the Opt-in Plaintiffs, putative collective members identified in the Complaint, or anyone else Named Plaintiff or Class Counsel seeks or may seek to represent in this Litigation or any other litigation (whether individually or as a collective or class action); (4) that any employee failed to receive a proper tip credit notice; (5) that any tips were improperly distributed; or (6) of the appropriateness of class and/or collective action certification in this Litigation or any other litigation. The Parties further agree that the furnishing of consideration shall not be deemed or construed for any purpose in this Litigation, any other litigation, or otherwise as an admission of liability or wrongful conduct of any kind by Defendants. Nothing in this Agreement shall constitute a waiver or admission as to any issue or defense Defendants may have to the claims asserted in the Complaint, this Litigation, or any other litigation, or the relief requested by Plaintiff or anyone in any further or future proceedings against Defendants. Indeed, Defendants denied, and continue to deny and vigorously dispute, the claims and allegations in the Litigation, and produced both documents and testimony demonstrating that its employees received a proper tip credit notice, and no tips were improperly distributed. Defendants agree to the Court's jurisdiction over these claims only for purposes of the review and enforcement of this Agreement, and reserve their right to challenge the Court's jurisdiction over Plaintiff's claims, Opt-In Plaintiffs, the putative collective members identified in the Complaint, and Defendants if the Court does not approve the Agreement or the settlement contemplated by this Agreement is not concluded for any reason. Plaintiff disputes that Defendants have preserved jurisdictional defenses.

      **B.**    Named Plaintiff and Class Counsel (1) have fully analyzed and evaluated the merits of the Opt-In Plaintiffs' claims and contentions, Defendants' defenses, and this settlement as it impacts the Opt-in Plaintiffs; (2) have conducted substantial informal and formal discovery in connection with this matter; (3) have researched the legal and factual issues associated with the Opt-In Plaintiffs' claims and contentions; (4) have communicated with the Opt-In Plaintiffs; and, (5) after taking into account the foregoing, along with the substantial risks of litigation (including the possibility that litigation might result in no recovery for Opt-in Plaintiffs, or a recovery or alternate settlement less favorable to Opt-in Plaintiffs, and any result from litigation or any alternate settlement might not occur for several years), Named Plaintiff and Class Counsel are satisfied that the terms of this Agreement are fair, reasonable, adequate and equitable, and beneficial to the Named Plaintiff and Opt-In Plaintiffs.

      **C.**    Defendants vigorously dispute the claims and allegations in the Litigation, including that Opt-In Plaintiffs in either the Tip Credit Notice Collective or Tip Pool Collective are similarly situated. Defendants contend that they produced documents and testimony showing the FLSA's tip credit notice requirements were met, and Defendants' tip pooling arrangements complied with all FLSA requirements. Defendants assert that the Named Plaintiff and Opt-In Plaintiffs should take nothing from this Litigation. Defendants nevertheless agree any litigation carries with it a risk of loss, including the loss of time, energy, and resources that may be deployed

by Defendants more productively. Defendants accordingly agree to the terms of the settlement and have agreed not to object to the settlement despite believing no recovery is proper.

      **D.**     Nothing in this Agreement or any action taken to implement it, or any statements, discussions, communications, or materials made or used in the course of settlement negotiations will be used in this or any other proceeding, or be considered as evidence of: (1) a violation of any federal, state, or local law, statute, rule or executive order, or any obligation or duty at law or equity; or (2) a waiver or admission as to any issue or defense, except to the extent expressly provided for in this Agreement. This Agreement, however, may be used in any proceeding that has as its sole and exclusive purpose the review, interpretation, or enforcement of the Agreement.

      **E.**     The Parties acknowledge and agree that the relief provided for Named Plaintiff and the Opt-In Plaintiffs pursuant to this Agreement ("Settlement Payments") was negotiated first, and without regard to costs, litigation expenses, or Class Counsel's alleged attorneys' fees.

      **F.**     On November 30, 2021, mediator Francis X. Neuner oversaw a mediation where the Parties agreed to a $1,200,000.00 settlement to resolve the Opt-In Plaintiffs' claims ("Collective Settlement Fund"), with an agreement that the Parties would separately and subsequently negotiate Plaintiffs' costs and litigation expenses, and Class Counsel's attorneys' fees.

      **G.**     On December 16, 2021, the Parties negotiated the issues of costs, litigation expenses, and Class Counsel's attorneys' fees, and agreed that Defendants would pay Class Counsel $1,100,000.00 as attorneys' fees pursuant to the FLSA, 29 U.S.C. § 216(b).

**III.**    **APPROVAL.**

      **A.**     **Final Order and Approval by the Court.** As soon as practicable and without undue delay, Named Plaintiff agrees to seek the Court's approval of the terms of this Agreement and, if approved, to dismiss Named Plaintiff, the Opt-In Plaintiffs, and Defendants with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement to the extent permitted by law.

      **1.**     A condition precedent to this Agreement is the Court's approval of the settlement as set forth in the Proposed Order Granting Approval of Settlement and Dismissing the Opt-In Plaintiffs and Defendants with Prejudice ("Proposed Approval Order"). Named Plaintiff agrees to seek approval of the settlement by filing with the Court a Motion for Approval of Settlement and Dismissing the Opt-in Plaintiffs and Defendants with Prejudice ("Motion for Approval"). Named Plaintiff and Class Counsel agree not to oppose Defendant's motion to file all, or a portion of the documents, related to this settlement under seal with the Court or to redact portions of such documents, including but not limited to this Agreement, the Motion for Approval, and all exhibits and supporting documentation (including any memorandum in support of the Motion for Approval). The Parties agree, however, that if the Court does not grant the filing of such documents under seal or with redactions, that alone will not undo this Agreement.

**2.** The Parties shall provide to the Court for review in connection with the review of this Agreement: (a) the Proposed Approval Order, attached hereto as Exhibit 1; (b) the Notice of Settlement of Collective Action Lawsuit to all Opt-In Plaintiffs, attached hereto as Exhibit 2, (c) exhibits to the documents provided, and (d) such other information as the Court may request.

**B. Entry of Judgment.** In the Proposed Approval Order, Named Plaintiff will request that the Court, among other things: (a) enter Judgment in accordance with the terms of this Agreement, (b) approve the settlement as fair, adequate, reasonable, and binding on Named Plaintiff and the Opt-In Plaintiffs, (c) dismiss the Opt-in Plaintiffs and Defendants from this lawsuit with prejudice, (d) enter an order permanently enjoining Named Plaintiff and all FLSA Collective Members from pursuing and/or seeking to reopen claims against Defendants or Releasees, and (e) incorporate the terms of this Agreement.

## IV. TERMS OF THE SETTLEMENT.

**A. Effective Date.** The "Effective Date" of the settlement is the date of the entry of the Court's Order Granting Approval of Settlement and Dismissing the Opt-In Plaintiffs and Defendants with Prejudice ("Order Granting Approval").

**B. Settlement Amounts.**

**1. Maximum Settlement Amount.** Defendants deny they violated the law in any manner, but for purposes of settlement only, and in full consideration for the terms, conditions, and promises herein, Defendants agree to pay a maximum settlement amount not to exceed Two Million Three Hundred Thousand Dollars and No Cents ($2,300,000.00) ("Maximum Settlement Amount"). This Maximum Settlement Amount includes all amounts that Defendants (including Defendant Locations) might be required to pay under this Agreement to Opt-In Plaintiffs and Class Counsel, including (a) the Collective Settlement Fund, consisting of (i) all Settlement Payments, (ii) any service enhancement, (iii) litigation costs and expenses, and (iv) settlement administration costs and expenses; and (b) attorneys' fees. The Maximum Settlement Amount is the maximum amount Defendants are obligated to pay under this Agreement; however, Defendants shall separately and in addition to the Maximum Settlement Amount pay the employer's share of payroll taxes on the Settlement Payments from the Collective Settlement Fund.

**2. Payment Amounts to the Opt-In Plaintiffs.**

**a.** Opt-In Plaintiffs include all individuals employed at the 13 Boyd properties who filed a Consent to Join the Litigation as part of the Tip Credit Notice Collective, the Tip Pool Collective, or both, including the Named Plaintiff and individuals who had opted into the litigation prior to the Notice Period. After any service enhancement, litigation costs and expenses, and settlement administration costs and expenses approved by the Court are paid from the Collective Settlement Fund, the remainder will be distributed to the Opt-In Plaintiffs as a fraction of potential damages as set forth in Paragraphs IV.B.2.a.i and IV.B.2.a.ii below.

          **i.**      **Portion of Remaining Collective Settlement Fund to be Allocated to the Tip Credit Notice Collective.** For purposes of allocating the remainder of the Collective Settlement Fund for those Opt-in Plaintiffs who qualify to be included in the Tip Credit Notice Collective, Class Counsel will evaluate the difference between their base hourly wage and the FLSA's $7.25 minimum wage for all hours worked during the relevant time period.

          **ii.**      **Portion of Remaining Collective Settlement Fund to be Allocated to the Tip Pool Collective.** For purposes of allocating the remainder of the Collective Settlement Fund for those Opt-in Plaintiffs who qualify to be included in the Tip Pool Collective, Class Counsel will evaluate the difference between their base hourly wage and the FLSA's $7.25 minimum wage for all hours worked during the relevant time period.

        **b.**      Settlement Payments made from the Collective Settlement Fund will be allocated 51% to the Tip Credit Notice Collective and 49% to the Tip Pool Collective. This allocation tracks the approximate distribution of alleged damages claimed, but disputed by Defendants, between the two collectives. Within each collective, the Settlement Payment will be allocated on a pro rata basis of the remainder of the Collective Settlement Fund based on the methodology set forth in Paragraphs IV.B.2.a.i. and/or IV.B.2.a.ii. above, with each Opt-In Plaintiff receiving a minimum payment of $50 for each collective of which the Opt-In Plaintiff is a member.

        **c.**      Time and pay records previously provided to Class Counsel by Defendants will be used to determine the individual pro rata Settlement Payment made to each Opt-In Plaintiff. The amounts allocated to each Opt-In Plaintiff as described above will be calculated by the Settlement Administrator.

        **d.**      Only the Opt-In Plaintiffs will be eligible for Settlement Payments.

        **e.**      Fifty percent (50%) of the Settlement Payments made to Opt-In Plaintiffs will be allocated to wages and fifty percent (50%) will be considered non-wages (liquidated damages and interest).

        **f.**      The appropriate withholding of federal, state, and local income taxes, each Opt-In Plaintiffs' share of FICA, FUTA, SUTA, Medicare, and any other payroll taxes including backup withholding, if required, will be made from the Settlement Payments attributed to wages. Defendants shall cooperate with the Settlement Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are customarily borne by employers, with respect to the amounts treated as wages and shall promptly pay such amounts to the Settlement Administrator. The Settlement Administrator will be solely responsible for all tax withholding determinations and payments. The Settlement Administrator will also issue IRS form W-2 to all Opt-In Plaintiffs at the times and in the manner required by the Internal Revenue Code of 1986 and consistent with this Agreement for the portion of each Settlement Payment attributable to wages and IRS form 1099-MISC for the portion attributable to penalties and interest. If the Internal Revenue Code, the regulations issued thereunder, or other relevant tax laws change after the Effective Date, the processes in this Paragraph may be modified in a manner to ensure compliance with such changes. The

Settlement Administrator will be solely responsible for any other withholdings, in addition to those referred to above.

        **g.**      Each Opt-In Plaintiff will be solely responsible for determining the amount of, and paying, all taxes (federal, state, and local) owed as a result of receiving any Settlement Payment or other consideration under this Agreement. The Parties agree that Defendants (including Defendant Locations), agents of Defendants (including Defendant Locations), persons associated with Defendants (including Defendant Locations), and Defendants' Counsel offered or provided **no** tax advice to anyone associated with this Agreement, including Opt-In Plaintiffs and Class Counsel. Each Opt-In Plaintiff agrees to defend, indemnify and hold Defendants free and harmless from and against any fines, liens, penalties, or interest assessed by any federal, state, county, municipal, or other entity in connection with the Opt-In Plaintiff's tax obligations resulting from any Settlement Payment, except Defendants' portion of applicable payroll taxes.

        **3.**      **Attorneys' Fees and Litigation Costs and Expenses.**

        **a.**      The Parties agree that the costs, litigation expenses, and attorneys' fees set forth in this Paragraph are the exclusive costs, litigation expenses, and alleged attorneys' fees to be funded by Defendants in this Litigation.

        **b.**      Consistent with this Agreement Defendants agree not to oppose a request by Class Counsel for court approval of the separately negotiated alleged attorneys' fees in an amount not to exceed One Million One Hundred Thousand Dollars and No Cents ($1,100,000.00). Provided the Court approves Class Counsel's request for One Million One Hundred Thousand Dollars and No Cents ($1,100,000.00) or a lesser amount, Defendants agree to pay the Court-approved amount separate from and in addition to the settlement amount going to the Opt-In Plaintiffs; provided, of course, that the total amount to be paid by Defendants does not exceed the Maximum Settlement Amount.

        **c.**      Defendants deny Class Counsel would be entitled to any payment if the Litigation proceeded to a litigated judgment, but agree for purposes of settlement only, not to oppose Class Counsel's request for reimbursement of alleged reasonable costs and litigation expenses from the Collective Settlement Fund in an amount not to exceed $85,000.00. Class Counsel agrees to file their request for attorneys' fees and litigation expenses contemporaneously with the Motion for Approval. If the Court does not grant Class Counsel's request for reimbursement of reasonable costs and expenses, the Parties agree the $1,100,000 amount for attorneys' fees described in Paragraph IV.B.3.b. will be inclusive of any reimbursement of reasonable costs and expenses, whether known or unknown. The Parties agree further that there will be no further or alternative request for reimbursement of reasonable costs and expenses.

        **d.**      In the event that the Court approves lesser amounts for either attorney's fees or litigation costs or expenses, any reduction will not affect the remaining terms

of the settlement, all of which will remain fully enforceable, and will not be a basis for Plaintiff to withdraw from the settlement.

        **e.**     Within 7 days after the Effective Date, Class Counsel will provide Defendants and the Settlement Administrator with a signed IRS form W-9 for Stueve Siegel Hanson LLP and McClelland Law Firm, P.C.

        **f.**     Within 30 days after the Effective Date, the Settlement Administrator will transmit the funds for attorneys' fees and litigation costs awarded by the Court by wire transfer to Class Counsel.

        **4.**     **Settlement Administration.** The full cost of settlement administration, including payment for all services and mailings, in an amount not to exceed Sixteen Thousand Four Hundred Third Six Dollars and No Cents ($16,436.00) will be paid from the Collective Settlement Fund. The Parties agree Plaintiff shall retain Analytics Consulting LLC as the "Settlement Administrator" to: (a) provide notice of the settlement to Opt-In Plaintiffs; (b) set up and administer a qualified settlement fund to disburse all Settlement Payments; (c) determine the individual settlement amount for each Opt-In Plaintiff; (d) calculate and make all necessary payroll tax and other withholdings; (e) distribute all Settlement Payments to Opt-In Plaintiffs; (f) address any questions from Opt-In Plaintiffs; (g) collect, prepare, mail, and file all necessary W-2, 1099-MISC, and other tax-related forms and reports; and (h) perform all other duties necessary to effectuate the Agreement. Class Counsel, at their option, may perform the initial notice process if that is more cost effective than paying the Settlement Administrator to do so. The Parties will cooperate fully to resolve promptly any issues identified by the Settlement Administrator. The Parties' Counsel shall have the right to make inquiries and receive all information from the Settlement Administrator as is reasonable and necessary to fulfill their business and/or professional responsibilities and for the administration of the settlement.

        **5.**     **Named Plaintiff Service Enhancement.** Defendants agree not to oppose a request by Plaintiff for court approval of an enhancement payment to Named Plaintiff of up to Five Thousand Dollars and No Cents ($5,000.00). This payment will be made from the Collective Settlement Fund. If the Court does not approve the service enhancement requested in this Paragraph, the difference between the amount requested by Class Counsel and the amount awarded by the Court will return to the Collective Settlement Fund to be distributed consistent with Paragraph III.B.2.

        **6.**     **Employer Payroll Taxes**. The employer share of FICA, FUTA, SUTA, Medicare and any other applicable payroll taxes for the payment amounts allocated to Opt-In Plaintiffs will be paid separately by Defendants and will not be paid out of the Maximum Settlement Amount.

        **C.**     **Waiver and Release.**

        **1.**     Each of the Opt-In Plaintiffs agree, on behalf of themselves and their respective heirs, descendants, dependents, executors, administrators, successors, and assigns,

to fully and finally release Defendants (including Defendant Locations) and their present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them (the "Releasees"), of and from any and all federal, state, local, and common law wage and hour claims, whether known or unknown, related to the tip credit and tip pooling (including, but not limited to, all claims that were asserted in the Complaint in the Litigation, ECF Doc. 1) arising from each of Opt-In Plaintiff's employment (or alleged employment or joint employment) with any of the Releasees, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any and all federal, state, local, and common law wage and hour claims, including FLSA claims (including but not limited to claims under 29 U.S.C. § 203) and unjust enrichment claims, and those arising under state law (including, but not limited to, the laws of the states of Kansas, Illinois, Indiana, Iowa, Louisiana, Mississippi, and Pennsylvania), as well as liquidated damages, that accrued or accrue from the beginning of time, through and including December 31, 2021, including claims, whether known or unknown, under any legal theory for failure to pay minimum wage, failure to pay overtime, and/or failure to pay for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the ERISA that are related to or derivative of the claims released in this Paragraph IV.C.1, other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law wage and hour claims.

      **2.**      This settlement is intended to include in its effect all claims identified in this Paragraph IV.C., including tip pool or tip credit claims, even if Opt-In Plaintiffs (individually or collectively) do not know or suspect they exist in Opt-In Plaintiffs' favor against Releasees as of the Effective Date. Each of Opt-In Plaintiffs agrees and acknowledges that each of Opt-In Plaintiffs was represented by and had the opportunity to seek the advice of Class Counsel, and that this is a knowing and voluntary waiver. Each of Opt-In Plaintiffs shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits each of Opt-In Plaintiffs may otherwise have or have had relating to the claims identified in this Paragraph IV.C.

      **3.**      Nothing in this Agreement will be considered a waiver of any claims by Opt-In Plaintiffs that may arise after December 31, 2021.

      **4.**      Each of Opt-In Plaintiffs further covenants that they will not participate in any other legal actions against Defendants for claims released by this Agreement, and will not opt-in, will withdraw any opt-in, will dismiss any action or dismiss themselves from any action in which such Plaintiffs are a claimant, plaintiff, or appellant, and will opt-out of those actions if they become aware of such actions. If an Opt-In Plaintiff violates this Agreement by suing any of

Releasee for a released claim, said violation(s) shall be grounds for the immediate imposition of injunctive relief on the Releasee's behalf by the United States District Court for the District of Kansas.

       **5.**       Class Counsel and Named Plaintiff, on behalf of the Opt-In Plaintiffs, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants or Releasees for attorneys' fees, expenses, and costs associated with Class Counsel's representation of Named Plaintiff and the Opt-In Plaintiffs in the Litigation, the Settlement, or any claims being Released by this Stipulation and related papers. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, and costs, whether known or unknown, associated with Class Counsel's representation of all the Opt-In Plaintiffs and/or their work in the Litigation.

       **6.**       The Parties acknowledge that the above waiver and releases were separately bargained for and are material terms of the Agreement.

       **D.**       **Future Inquiries.** It is the Parties' desire that this Agreement be the final resolution of any and all disputes that were or could have been included in this Litigation. To the extent consistent with Class Counsel's legal and ethical obligations, anyone employed by any of the Releasees as a non-exempt employee who does not participate in the settlement and later contacts Class Counsel expressing interest in pursuing claims that would otherwise have been released under this Agreement, will be presented by Class Counsel to Defendants' Counsel for settlement consistent with the terms of this Agreement before filing any individual, class, or collective claims, though doing so will not entitle Class Counsel to any additional attorneys' fees, expenses, or costs.

       **E.**       **No Assignment.** Class Counsel and Named Plaintiff, on behalf of the Opt-In Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

       **F.**       **Notice to Opt-In Plaintiffs and Settlement Approval.**

       **1.**       Within 7 days of the execution of this Agreement, Plaintiffs will send the Settlement Administrator (with a copy to Defendants' Counsel) a list of all Opt-In Plaintiffs, which will include each individual's name, last known physical address, last known e-mail address, and information necessary to calculate individual estimated damage amounts during the relevant time period(s) set forth in Paragraphs IV.B.2.a.i. and/or IV.B.2.a.ii. above, as well as such additional information as the Settlement Administrator may reasonably request as needed for the administration of the settlement. This information will be derived from the Consent to Join forms submitted by the Opt-In Plaintiffs, along with records Defendants provided to Named Plaintiff during discovery and in connection with mediation. The Settlement Administrator will calculate each individual's pro rata share of the Settlement Payment based on their individual estimated damage amounts as described in Paragraph III.B.2.a.

**2.**     Within 14 days of the execution of this Agreement, or as soon thereafter as is practicable, the Settlement Administrator (or Class Counsel at their option) will provide written notice of the settlement to all Opt-In Plaintiffs via e-mail. If e-mail is unavailable, then the Settlement Administrator (or Class Counsel at their option) will send the notice via regular U.S. mail. This notice will include, among other things: (1) the material terms of the settlement, including the overall settlement amount; (2) the individual's estimated individual settlement amount; (3) the formula used to calculate the individual's estimated settlement amount; (4) the income tax reporting for the settlement; (5) the amount of the proposed enhancement award, the amount paid to Class Counsel for attorneys' fees, costs, and litigation expenses; (6) a limited release binding each Opt-In Plaintiff; (7) an opportunity to review the Agreement and acquire more information about the distribution formula and all other terms of settlement; and (8) instructions on how to object to the settlement. For any Opt-In Plaintiff whose written notice is returned as undelivered, the Settlement Administrator, in coordination with Class Counsel, will take reasonable steps to locate the Opt-In Plaintiff and re-mail the notice.

**3.**     Within 14 days following the objection deadline described in Paragraph IV.F.2, Plaintiff will file a Motion for Approval.

**4.**     Defendants may move to have a portion or all of the Agreement and/or the Motion for Approval filed under seal or filed with certain key items redacted; Plaintiffs agree not to oppose such a motion; if the Court declines to allow any documents to be filed under seal and/or redacted in part, the Parties agree that decision will not undo the Parties' Agreement, nor will it permit Defendants to withdraw from the Agreement. Any motion by Defendants to have a portion or all of this Agreement and/or the Motion for Approval filed under seal shall be filed within 14 days of the full execution of this Agreement or filing of the Motion for Approval, respectively.

**5.**     Defendants have the right to withdraw from the settlement at any time prior to the entry of an order granting final approval of the settlement if (a) the terms of this Agreement construed by the Court are materially different, in Defendants' reasonable opinion, from the Parties' Agreement, or (b) Named Plaintiff or Class Counsel breaches the Agreement. In the event Defendants withdraw from the Agreement pursuant to this paragraph, (i) this Agreement shall have no force or effect, other than the limitations on media or press attention set forth in Paragraph IV.F and the non-admission provisions in Paragraph II.A; (ii) neither this Agreement nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and (iii) the Litigation will continue as if the Agreement had never been entered into.

**G.     Escrow Account and Distribution of Settlement Payments to Opt-In Plaintiffs.**

**1.**     Within 14 days of the Effective Date, Defendants shall deliver the Maximum Settlement Amount into an escrow account created and controlled by the Settlement Administrator. This escrow account shall be an FDIC insured interest-bearing account created and

controlled by the Settlement Administrator. The Settlement Administrator will provide monthly, detailed accounting statements for the escrow account to Defendants' Counsel.

   **2.** The Parties agree to treat the escrow account as a "qualified settlement fund" within the meaning of Treas. Reg. Section 1.468B-1. In addition, the Parties will jointly and timely make the "relation back election" to the earliest permitted date, as provided in Treas. Reg. Section 1.468B-1(j)(2). Such election will be made in compliance with the procedures and requirements set forth in such Treasury regulations. The Settlement Administrator is solely responsible for preparing and delivering the necessary documents for signature by the Parties and making the appropriate filing.

   **3.** For purposes of Internal Revenue Code of 1986 Section 468B and Treas. Reg. Section 1.468B-2(k)(3), the Settlement Administrator will be the Qualified Settlement Administrator and will timely and properly file all information and other tax returns necessary or available with respect to the settlement amounts including without limitation the returns described in Treas. Reg. Sections 1.468B-2(k)(1) and 1.468B-(2)(l). The returns will be consistent with this Agreement and in all events will reflect that all taxes including any estimated taxes, interest, or penalties arising with respect to the income earned by the deposited Collective Settlement Fund will be paid out of the Collective Settlement Fund. All taxes, expenses, and costs incurred relating to the operation and implementation of this Paragraph, including, without limitation, any expenses of tax counsel or accountants and mailing costs and expenses relating to the filing or failing to file any returns (hereinafter "tax expenses") will be paid out of the Maximum Settlement Amount and income earned on this amount. Taxes and tax expenses will be treated as, and considered to be, a cost of administering the individual settlement amounts and the Qualified Settlement Administrator will be obligated to withhold from individual settlement amounts any funds necessary to pay such taxes and tax expenses and any taxes that may be required to be withheld pursuant to Treas. Reg. Section 1.468B-2(l)(2).

   **4.** During any period the escrow account is not a qualified settlement fund for tax purposes, the Qualified Settlement Administrator will pay to Defendants in a timely fashion from the Maximum Settlement Amount sufficient funds to enable it to pay taxes and any interest or penalties on income earned by the Maximum Settlement Amount, other than interest or penalties incurred by Defendants as a result of any action or inaction on the part of Defendants that caused the Maximum Settlement Amount to be treated as other than a qualified settlement fund. The Parties agree to cooperate with the Settlement Administrator and each other and their tax attorneys and accountants to the extent necessary to carry out the Agreement.

  **H.** **Delivery of Settlement Checks.**

   **1.** Within 30 days of the Effective Date, or as soon thereafter as is practicable, the Settlement Administrator will mail to Opt-In Plaintiffs their individual settlement checks. For any Opt-In Plaintiff whose settlement check is returned as undelivered, the Settlement Administrator, in coordination with Class Counsel, will take reasonable steps to locate the Opt-In Plaintiff and re-mail the check.

**2.**     Settlement checks not presented for payment after 120 days of mailing will be transmitted by the Settlement Administrator to the state's unclaimed property fund of the state to which the unclaimed check was mailed.  The Settlement Administrator will issue for each Opt-In Plaintiff an IRS form 1099-MISC (or other related tax document) showing the amount of non-wages (liquidated damages and interest) paid and IRS form W-2 showing the amount of wages in the year it was paid.

**I.**     **Dismissal with Prejudice.** Opt-In Plaintiffs shall be deemed to have accepted the benefits provided herein as consideration in full satisfaction of all the claims covered by this Agreement regardless of whether the Opt-In Plaintiff ultimately deposits his or her check and receives the proceeds therefrom. Plaintiff shall provide the Court with the Proposed Approval Order, subject to, but without affecting the finality of the order, retaining exclusive jurisdiction over the consummation, performance, administration, effectuation, and enforcement of the order as may be necessary and appropriate for the construction and implementation of the terms of the Agreement.

**J.**     **No Media, Press or Other Public Attention.** Class Counsel will not seek media or press attention regarding the settlement, nor post information regarding the settlement on their website or any other online platform (including, but not limited to, any marketing, website, or social media references to the Agreement or the settlement such as "Fortune 1000 company," "national casino operator," or the date of the Agreement or the settlement). Class Counsel, shall not, directly or indirectly, issue a press release, hold a press conference, publish information about the settlement or the settlement negotiations on any social media application, e-mail correspondence, website, or otherwise publicize the settlement or negotiations. Class Counsel further agrees not to respond to any press inquiries concerning the settlement except to refer reporters to public filings made with the United States District Court for the District of Kansas.

**K.**     **Disclosure Pursuant to Court Order or Subpoena.** If the Court grants all or any part of Defendants' motion to file this Agreement under seal, and Named Plaintiff or Class Counsel ever receive a court order or subpoena that may require disclosure of information protected by the Order or this Agreement, Named Plaintiff and Class Counsel agree (1) not to object to Defendants' efforts to maintain all protections provided; and (2) to provide notice in writing to Boyd's General Counsel and Defendants' Counsel at the addresses below within ten (10) days of receiving such order or subpoena, or sooner if necessary to give Defendants reasonable time to take steps to protect their interests:

**CONFIDENTIAL**
General Counsel
Boyd Gaming Corporation, Inc.
6465 South Rainbow Boulevard
Las Vegas, NV 89118

**AND**

**CONFIDENTIAL**

Denise K. Drake
Polsinelli PC
900 West 48th Place
Kansas City, MO 64112

## V.    GENERAL PROVISIONS.

### A.    Parties' Authority.

1.    The signatories represent that they are fully authorized to enter into this Agreement and to bind the Parties and Opt-In Plaintiffs hereto to the terms and conditions of the Agreement.

2.    The Parties and Opt-In Plaintiffs acknowledge that throughout negotiations they have been represented by Counsel experienced in wage and hour class / collective litigation and that this Agreement has been prepared with the consent and approval of their respective Counsel.

**B.    Mutual Full Cooperation.** The Parties agree to cooperate fully to implement and effectuate the terms of this Agreement including executing all necessary documents.

**C.    Modification.** This Agreement and its exhibits may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court.

**D.    Entire Agreement.** This Agreement and its exhibits constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic evidence of any kind will modify or contradict the terms of this Agreement.

### E.    Voiding the Agreement.

1.    In the event this Agreement is not approved by the Court, this Agreement shall be null and void in its entirety unless otherwise agreed to in writing by the Parties.

2.    If judicial approval of the Agreement is denied, the Parties will use their best efforts to reach agreement on any provisions rejected by the Court for a period not less than 60 days after the date approval is denied. The Parties will file a joint motion for a stay of the action during the 60-day period.

**F.    Counterparts.** This Agreement may be executed in counterparts, and when each Party has executed at least one counterpart, it will be deemed an original, and when taken together, will constitute one Agreement, which will be binding and effective as to all Parties.

**G.    Binding on Assigns and Successors.** This Agreement shall be binding upon, and inure to the benefit of, the Parties and Opt-In Plaintiffs, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

H.     **Miscellaneous.**

1.     The Parties agree to stay all proceedings in this action, except as may be necessary to complete and implement the terms of the Agreement, pending final approval of the Agreement.

2.     The headings contained in this Agreement are for reference only and are not to be construed as part of the Parties' Agreement.

3.     No Party will be considered a prevailing Party for any purpose except as necessary for the award of attorneys' fees, costs, and expenses specifically identified in this Agreement.

4.     The United States District Court for the District of Kansas shall have jurisdiction to interpret and enforce this Agreement, including but not limited to the imposition of injunctive relief for pursuit of claims released by this Agreement and/or requests for fees, costs, or expenses resolved by this Agreement.

5.     Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose Counsel transmits the signature page by facsimile or email.

6.     This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Kansas, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

7.     Following entry of the Court's Order Granting Approval, should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

8.     If any deadlines related to this Settlement cannot be met, Class Counsel and Defendants' Counsel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. If the Parties fail to reach agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

9.     Named Plaintiff and Class Counsel agree to return and/or destroy all documents and materials related to Defendants designated as "Confidential" within 30 days of

the conclusion of this Litigation pursuant to the Parties' Protective Order (ECF Doc. 16) in the Litigation or produced to them in connection with settlement negotiations in the Litigation.

In witness hereof, the Parties and their duly authorized representatives have executed this Agreement below.

**(*Remainder of Page Intentionally Blank*)**

**PLAINTIFF:**

Dated: April 19 _____, 2022

_____
Roger James
Named Plaintiff

**DEFENDANTS:**

Dated: _____, 2022

_____
Uri Clinton,
Executive Vice President, General Counsel
and Secretary of Boyd Gaming Corporation

Dated: _____, 2022

_____
Allison Bahr
Director of Human Resources, Kansas Star
Casino LLC
Kansas Star Casino, LLC

**CLASS COUNSEL AS TO FORM AND CONTENT:**

STUEVE SIEGEL HANSON LLP

DATED: _____, 2022

By: _____

McCLELLAND LAW FIRM, P.C.

DATED: _____, 2022

By: _____

**PLAINTIFF:**

Dated: _____, 2022

_____
Roger James
Named Plaintiff

**DEFENDANTS:**

Dated: __5-2____, 2022

_____
Uri Clinton,
Executive Vice President, General Counsel
and Secretary of Boyd Gaming Corporation

Dated: __4/28____, 2022

_____
Allison Bair
Director of Human Resources, Kansas Star
Casino LLC
Kansas Star Casino, LLC

**CLASS COUNSEL AS TO FORM AND
CONTENT:**

STUEVE SIEGEL HANSON LLP

DATED: _____, 2022

By: _____

McCLELLAND LAW FIRM, P.C.

DATED: _____, 2022

By: _____

17

**PLAINTIFF:**

Dated: _____, 2022                    _____
                                               Roger James
                                               Named Plaintiff

**DEFENDANTS:**

Dated: _____, 2022                    _____
                                               Uri Clinton,
                                               Executive Vice President, General Counsel
                                               and Secretary of Boyd Gaming Corporation

Dated: _____, 2022                    _____
                                               Allison Bahr
                                               Director of Human Resources, Kansas Star
                                               Casino LLC
                                               Kansas Star Casino, LLC

**CLASS COUNSEL AS TO FORM AND
CONTENT:**

                                               STUEVE SIEGEL HANSON LLP

DATED: __April 21, 2022__, 2022                By: _____

                                               McCLELLAND LAW FIRM, P.C.

DATED: _____, 2022                    By: _____

**PLAINTIFF:**

Dated: _____, 2022

_____
Roger James
Named Plaintiff

**DEFENDANTS:**

Dated: _____, 2022

_____
Uri Clinton,
Executive Vice President, General Counsel
and Secretary of Boyd Gaming Corporation

Dated: _____, 2022

_____
Allison Bahr
Director of Human Resources, Kansas Star
Casino LLC
Kansas Star Casino, LLC

**CLASS COUNSEL AS TO FORM AND
CONTENT:**

STUEVE SIEGEL HANSON LLP

DATED: _____, 2022        By: _____

McCLELLAND LAW FIRM, P.C.

DATED: _____April 19_____, 2022     By: _____

17